BYRNES, Judge.
Defendant Kevin Joyner was charged with possession of cocaine. La.R.S. 40:967. Following an unsuccessful attempt to suppress the evidence against him, the defendant withdrew his guilty plea and entered a plea of guilty, reserving his right to attack the court’s ruling on the motion to suppress the evidence. State v. Crosby, 338 So.2d 584 (La.1976). The defendant was given a suspended eighteen month sentence at hard labor. He was placed on eighteen month’s active probation, with special conditions.[1] Joyner appeals his conviction and sentence based upon this one assignment of error. We affirm defendant’s conviction and sentence.
A hearing on the motion to suppress the evidence was conducted at which time New Orleans Police Officer Danny Kramer testified.
On September 13, 1988 at approximately 1:45 p.m., Officer Kramer and his partner, Officer Steven Hardy were on routine patrol in an unmarked police car. The pair were traveling riverbound on Monroe Street when they obsreved a 1978 Cadillac, with an expired license plate, travelling in front of them. The vehicle was occupied by two persons. The identity of the occupants were later discovered to be Margaret Willis, the driver, and her grandchild, the defendant passenger. As the policemen followed the vehicle it turned off of Monroe Street and unto Monroe Court. The officers were intent upon stopping the vehicle and issuing a citation to the driver for the expired license plate. However, as they turned the corner unto Monroe Court in pursuit of the vehicle, the policemen observed that the vehicle had already stopped and was parked on the street. Before the officers could get out of their police car, they observed the defendant exit his vehicle, leaving the driver seated in the car. The defendant began to walk away from the vehicle in a riverbound direction.
Officer Hardy approached the driver’s side of the subject vehicle, while Officer Kramer walked towards the passenger side. Officer Kramer ordered the defendant to stop. Joyner turned around and began to return to the vehicle. The defendant’s hands were clinched. As he reached the front of the vehicle he opened his right hand and a clear plastic, containing five plastic packets of a white powder, fell to the ground. The white powder later tested positive for cocaine. Joyner was arrested and charged with possession of cocaine. Willis was given a traffic citation.
*1248 Officer Hardy’s testimony was refuted by the defendant and his grandmother. According to their testimony, the pair were driving to the house of the defendant’s uncle’s girlfriend, on Monroe Court. At the time, they had parked outside the girlfriend’s house and were waiting for the defendant’s uncle. The pair had been parked approximately 10 minutes when the police arrived and blocked their vehicle with the police car. According to Ms. Willis and her grandson, the police exited their car with their guns drawn and ordered them out of their vehicle. One officer walked with the defendant to the front of the car and told the defendant to place his hands on the car’s hood. The officer ordered the defendant to open his fists and as he did the cocaine was discovered.
In his sole assignment of error the defendant contends the trial judge erred in refusing to suppress the evidence against him. He reasons that the arresting officer did not possess reasonable cause to stop him and as such, the abandoned contraband was illegally seized.
The United States Supreme Court, in U.S. v. Cortez, 449 U.S. 411 at 415, 101 S.Ct. 690, 695-696, 66 L.Ed.2d 621 (1981), reh. den., 455 U.S. 1008, 102 S.Ct. 1648, 71 L.Ed.2d 877 discussed the issue of an investigatory stop:
The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of the vehicle here. Reid v. Georgia, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980); United States v. Brignoni-Ponce, 422 U.S. [873] supra at 878, 95 S.Ct. [2574] at 2578 [45 L.Ed.2d 607 (1975); Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Terry v. Ohio, 392 U.S. 1, 16-19, 88 S.Ct. 1868, 1877-1879, 20 L.Ed.2d 889 (1968). An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 541 (1979); Delaware v. Prouse, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979); United States v. Brignoni-Ponce, supra, 422 U.S., at 884 95 S.Ct., at 2581; Adams v. Williams, 407 U.S. 143, 146-149, 92 S.Ct. 1921, 1923-1924, 32 L.Ed.2d 612 (1972); Terry v. Ohio, supra 392 U.S., at 16-19, 88 S.Ct., at 1877-1879.
Courts have used a variety of terms to capture the elusive concept of what cause is sufficent to authorize police to stop a person.
... But the essence of all that has been written is that the totality of the circumstances — the whole picture — must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for supecting the particular person stopped of criminal activity. See, e.g., Brown v. Texas, supra, 443 U.S., at 51, 99 S.Ct., at 2640; United States v. Brignoni-Ponce, supra, 422 U.S., at 884, 95 S.Ct., at 2581. The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First the assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities ...
The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing.
The authorization for an investigatory stop has been statutorily adopted by Louisiana. La.C.Cr.P. Art. 215.1.
In assessing the reasonableness of such a stop, one must engage in a balancing test which weighs the need to search and seize against the invasion the *1249 search and seizure entails. State v. Flowers, 441 So.2d 707 (La.1983), cert. den. 466 U.S. 945, 104 S.Ct.1931, 80 L.Ed.2d 476 (1984). In the case of a vehicular stop, a passenger generally has a higher expectation of privacy than the driver because the passenger plays no part in the routine traffic infraction. State v. Williams, 366 So.2d 1369 (La.1978), overruled on other grounds, by State v. Mack, 403 So.2d 8 (La.1981). In those instances in which the officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized by the police officer. State v. Brown, 530 So.2d 650 (La.App. 4th Cir., 1988) citing State v. Andrishok, 434 So.2d 389 (La.1983).
In the instant case the record reflects that the subject vehicle was not stopped by the policemen on the scene. Rather it had come to a stop prior to any police action and thereafter the defendant left the car and began to walk away from it. At this point, Officer Kramer “not sure of the ownership of the vehicle” and “curious why he was walking away, ... became suspicious that he possibly committed [a crime] or was in possession”, thus the officer ordered the defendant to stop. The defendant turned around and began to walk back to his vehicle. As he did so he opened his right hand and dropped the package of contraband.
Under the totality of the circumstances because the arresting officer was unsure of the ownership of the vehicle and because the defendant was leaving the scene as the law enforcement officers approached, this gave rise to a reasonable suspicion that the defendant had been or was engaged in criminal activity. As such, the officer was legally justified in conducting the stop of the defendant and the abandonment of the contraband during this time gave rise to its legal seizure. We find no error in the trial judge’s ruling on the motion to suppress the evidence. This assignment lacks merit.
For these reasons the defendant’s conviction and sentence are affirmed.
AFFIRMED.
PLOTKIN, J., dissents with reasons.

. The conditions of probation consist of substance abuse evaluation, payment of court costs of $159 and fine of $200 by February 16, 1989.