STEWART, Judge.
Edith Jacobs pled guilty to possession of cocaine with the intent to distribute and was sentenced to five years at hard labor. The trial court suspended her sentence and placed her on three years of probation subject to special conditions. She appeals the trial court’s denial of her motion to suppress the evidence found during a search of her person. We affirm.
FACTS
On June 11, 1992, pursuant to a search warrant, officers of the Drug Interdiction Task Force searched a location described as, “a gas station and convenience store at the corner of Milam Street and Pierre Avenue on the North East comer in Shreveport, Louisiana,” for the presence of controlled dangerous substances. Jacobs, who was in the store, was detained inside the store and a search was conducted of a pouch strapped to her waist. Cocaine was found within the pouch and Jacobs was charged with possession of cocaine with intent to distribute. Subsequently, Jacobs filed a motion to suppress the evidence found in the pouch. The trial court denied the motion because it felt that the officer had reason to believe that the people in the store were armed and dangerous and therefore a protective search was valid under the circumstances. Jacobs then entered a plea of guilty, expressly reserving her right to appeal the judge’s ruling on the motion to suppress pursuant to State v. Crosby, 338 So.2d 584 (La.1976).
Jacobs appeals and assigns two errors to the trial court’s judgment: (1) The scope of a warrant to search the premises does not implicitly include a personal search of all persons found therein; hence the trial court erred in denying the motion to suppress all physical evidence and fruits derived from an illegal search and seizure. (2) Alternatively, even if the scope of a search warrant implicitly allows the detention of all persons found on the premises, the trial court still erred in denying the motion to suppress because the state failed to prove the legality of the war-rantless search of defendant’s person and purse. We disagree. We shall discuss the assignments in reverse order.
DISCUSSION

Assignment of Error No. 2

Jacobs also contends that the trial court, erred in denying the motion to suppress because the state failed to prove the legality of the warrantless search of defendant’s person and pouch. The Fourth Amendment and LSA-Const. Art. 1, § 5, prohibit unreasonable searches and seizures. A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Welles, 593 So.2d 465, 468 (La.App. 2d Cir.1992) writ denied 598 So.2d 357 (La.1992). Under one of these exceptions, a law enforcement officer has the power to perform a reasonable search for weapons when he has reason to believe that he is dealing with an armed and dangerous individual. Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). The central inquiry of this exception to the warrant requirement is the reasonableness in all circumstances of the particular governmental invasion of a citizen’s personal security. Id. at 19, 88 S.Ct. at 1878-79.
At the hearing, Officer Luce, an agent of the Caddo-Bossier Narcotics Task Force, *810 testified that after watching the store and sending in confidential informants who made controlled buys of cocaine, he applied for and obtained a search warrant. As soon as other members of the task force had secured the store, he entered and saw Jacobs prone on the floor with her hands visible. He also testified that Jacobs made no threatening gestures and was complying with the orders of the police. When she was asked to stand, Officer Luce saw the zippered pouch strapped to her waist. He described the pouch as a “fanny pack” type and being about a foot long and able to fill his hand. He stated that it was “plenty long enough to handle a standard police weapon.” Officer Luce also saw that something was inside the pouch and that it was within arms reach of Jacobs. He testified that, out of concern for his safety and that of the other officers, he removed the pouch from Jacobs’ waist and looked inside it to check for weapons. Officer Luce stated that he did not squeeze the pouch in order to identify its contents due to his fear that it might contain a needle contaminated with the AIDS virus.
Moreover, according to Officer Luce, the convenience store is located in a volatile neighborhood known for violence and drug activity. Approximately six months prior to the instant search, Officer Luce participated in the execution of another search warrant for this same store where weapons were recovered from patrons inside. He was familiar with the store and knew that it had a history of constant traffic in the delivery and sale of narcotics.
An analogous case to the case sub judice is Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In this case, a driver had been pulled over to the side of the road because he had an expired brake tag. The police officer asked the driver of the vehicle to step outside the car. Outside the car, the police officer saw that the driver of the car had a bulge in his coat. There was nothing else unusual or suspicious about the driver’s behavior. The police officer performed a pat-down search of the driver and found a .38 caliber revolver. The United States Supreme Court in holding that the officers’ search was valid under Terry v. Ohio, supra stated that “[t]he bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of ‘reasonable caution’ would likely have conducted the ‘pat down.’” Id. at 111-12, 98 S.Ct. at 334.
In Mimms and in the instant case, the police officers’ concerns for safety were heightened by the lineaments of the defendants’ clothing. In Mimms precaution was warranted by a bulge in a coat jacket and in this case it was the existence of a zippered “fanny pack” pouch strapped in front of Jacobs’ waist replete with the unknown. In both cases, these suspect areas were places where a weapon could easily be concealed and in both cases the police performed limited searches to protect their safety. In the instant case, more reasons existed to search Jacobs than the defendant in Mimms, because: (1) Weapons are often associated with narcotics transactions. United States v. Martin, 794 F.2d 1531 (11th Cir.1986) (recognizing that weapons are the tools of the trade of drug trafficking); United States v. Cruz, 909 F.2d 422 (11th Cir.1989) (recognizing that individuals involved in drug trafficking are often armed); (2) Weapons had previously been found in a search of this store. Therefore, when Officer Luce searched the zippered pouch out of his concern for the safety of all officers inside the store, the search was valid pursuant to Terry v. Ohio, supra.
Jacobs cites State v. Jackson, 459 So.2d 169 (La.App. 2d Cir.1984), as support for her contention that the law enforcement officers had no justification to search her. In Jackson, law enforcement officers raided an establishment suspected of selling alcoholic beverages without a license. The defendant was a patron of this establishment. When the police entered the building, the defendant complied with the police instructions to place her hands on a table and she made no threatening gestures. The defendant’s purse was lying about one foot from the defendant. The police searched her purse and found a handgun. This court held that the defendant’s presence in the raided establishment *811 did not provide a justification for a search of her purse without a warrant. Id. at 170-71.
Although Jackson bears some similarity to the instant case, it is factually distinguishable. In Jackson, this court was faced with the investigation of a bar illegally selling alcohol. There was no history or other indi-cia of danger or violence involved in this raid. The court noted that there was no evidence to indicate a suspicion on the part of the officers that the defendant was in any way involved in any criminal activity, much less an activity that would present a danger to the police. Id. at 170. By contrast, the instant police officers confronted the very real possibility that weapons may be present during the execution of this warrant to search for controlled dangerous substances. See United States v. Martin, supra; United States v. Cruz, supra. Moreover, Officer Luce testified that weapons had been discovered at this location in the recent past and that a weapon could have been secreted in this pouch that was on the person of Jacobs. We find that sufficient reasons existed in this case for the police officers to fear for their safety and to believe that persons in this store would be armed and dangerous. We therefore find this assignment of error to be without merit.

Assignment of Error No. 1

Jacobs contends that the trial court, while finding that the search warrant was for a place, nevertheless, extended the scope of the warrant to include the search of persons found on the premises. As support for her argument, she cites Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1978). In Ybarra, the Court recognized that a warrant issued to search an area for narcotics does not authorize the search of a person simply because he is present with others suspected of criminal activity or at a location where such activity is occurring. Id. at 92, 88 S.Ct. at 343. Defendant correctly states the law; however, her reliance on Ybarra is misplaced. Unlike Ybarra, Jacobs was not subjected to a limited search merely because she was present when the search warrant for the store was executed. The factor missing in Ybarra but present in the instant case is a reasonable belief by the officers that Jacobs’ pouch might contain a dangerous weapon. Moreover, the trial court’s denial of the motion to suppress was correctly based on its determination that Officer Al Luce conducted a protective search valid under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Therefore, this assignment of error is without merit.
Pursuant to LSA-C.Cr.P. Art. 920(2), we have examined the record for errors patent and have found none.
The trial court’s judgment is affirmed.
AFFIRMED.